I, Ashleigh T. Bundy, Special Agent, being duly sworn depose and say:

## I. INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the United States Environmental Protection Agency – Criminal Investigation Division ("EPA-CID"). I have been in this position since September of 2021. I am currently assigned to the EPA-CID Kansas City Investigations Section located in Lenexa, Kansas, which includes coverage of the Western District of Missouri. My responsibilities include conducting investigations of alleged criminal violations of federal statutes, including the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901, et seq. As a Special Agent, I have received extensive training on environmental laws and criminal investigations of environmental crimes.

2. As an EPA-CID Special Agent, I am authorized by law, under 18 U.S.C. § 3063, to obtain and execute federal arrest and search warrants and serve as a Federal Law Enforcement Officer for purposes of Federal Rule of Criminal Procedure 41(a)(2)(c). I am responsible for, among other things, conducting investigations of alleged criminal violations of various environmental statutes including RCRA and the regulations promulgated thereunder, which govern the handling of hazardous wastes. I also have statutory law enforcement authority for Title 18 offenses.

3. The facts contained in this affidavit come from my personal observations, my training and experience, and information I obtained from other agents, witnesses, persons, and agencies. This affidavit is intended to show that there is sufficient probable cause for the requested warrant. It does not set forth all my knowledge, or the knowledge of others, about this matter.

4. Based on my training and experience and the facts as set forth in this affidavit, I respectfully submit that there is probable cause to believe that violations of 42 U.S.C. § 6928(d)(2)(A) (a subsection of RCRA) have been committed by William Garvey, the owner of HPI Products, Inc., ("HPI") at the company's facility at 222 Sylvanie Street in Saint Joseph, Missouri, ("**Subject Premises**") and by other unidentified individuals and entities. There is also probable cause to search the **Subject Premises** (as described in Attachment A) for evidence, instrumentalities, and/or fruits of these crimes, specifically to obtain samples from intermediate bulk containers ("totes") and storage drums for scientific testing (as described in Attachment B).

## II. STATUTORY AND REGULATORY BACKGROUND

5. The Solid Waste Disposal Act of 1965, as amended in 1976 by the Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901 et. seq., was enacted by Congress to address the growing number of hazardous waste sites resulting from unregulated waste disposal practices. The objectives of RCRA include, among other things, protection of human health and the environment through stringent guidelines that regulate the generation, treatment, storage, transportation, and disposal of hazardous wastes. RCRA accomplishes its objectives by creating a "cradle to grave" regulatory scheme to govern and track hazardous wastes from the point of generation to final disposition. See, generally, 42 U.S.C. § 6921-25.

6. RCRA empowers the EPA to identify and list solid wastes which meet the statutory definition of hazardous waste. 42 U.S.C. § 6921. It also authorizes EPA to promulgate regulations which set forth requirements for hazardous waste generators, transporters, and owners and operators of hazardous waste treatment, storage, and disposal ("TSD") facilities.

7. To be regulated as a hazardous waste under RCRA, the material must first qualify as a "solid waste." The term "solid waste," as used in the statute and the regulations promulgated

there under, includes any solid, liquid, semi-solid, or contained gaseous material resulting from industrial, commercial, mining and agricultural activities. See 42 U.S.C. § 6903(27) and 40 C.F.R. § 261.2.

8. Among other things, the statute requires that EPA identify and list solid wastes which meet the statutory definition of hazardous waste. 42 U.S.C. § 6921. Section 6903 of RCRA, 42 U.S.C. § 6903(5), defines, "hazardous waste" as:

> *[A] solid waste, or combination of solid wastes, which because of its quantity, concentration, or physical, chemical or infectious characteristics may --*
>
> *(A) cause or significantly contribute to an increase in mortality or an increase in serious irreversible, or incapacitating reversible illness; or*
>
> *(B) pose a substantial present or potential hazard to human health or the environment when improperly treated, stored, transported, or disposed of, or otherwise managed.*

9. Relevant to this matter, materials are considered to be discarded, and hence to be solid wastes if they are "abandoned" as defined in the RCRA regulations. A material is "abandoned" if it is disposed of, burned or incinerated (or is accumulated, stored or treated before, or in lieu of, being disposed of, burned or incinerated). 40 C.F.R. § 261.2(b). The term "disposal" means the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment. 42 U.S.C. § 6903(3).

10. A solid waste is considered a hazardous waste under the RCRA regulations if it is either specifically listed in the RCRA regulations (known as "listed" hazardous waste), or if it exhibits one of four characteristics: ignitability, corrosivity, reactivity or toxicity (known as

3

"characteristic" hazardous waste). 40 C.F.R. Part 261 codifies the identification and listing of hazardous waste, while Subpart C of Part 261 codifies the characteristics of hazardous waste. A hazardous waste characteristic is a property which, when present in a waste, indicates that the waste poses a sufficient threat to merit regulation as hazardous.

11. A solid waste is a characteristic ignitable hazardous waste if a representative sample of the material is a liquid, other than an aqueous solution containing less than twenty-four percent alcohol by volume, with a flash point of less than 140 degrees Fahrenheit, as determined using a specified test method. 40 CFR § 261.21. Wastes exceeding the regulatory levels for specified contaminants are assigned a D waste code. Ignitable hazardous waste is referred to in the RCRA regulations as "D001" waste. A solid waste is a corrosive hazardous waste if a representative sample of the material is aqueous and has a pH less than or equal to 2, or greater than or equal to 12.5, as determined using a specified test method. 40 C.F.R. 261.22. Corrosive hazardous waste is referred to in the RCRA regulations as "D002" waste.

12. Under RCRA regulations, hazardous wastes may only be transported to, treated by, stored at, or disposed of at facilities which have received permits properly issued pursuant to RCRA to handle such wastes in accordance with RCRA. 42 U.S.C. §§ 6925 and 6926. These RCRA permits impose regulatory conditions specifically tailored and limited to the type of hazardous waste handling activity at that particular facility. The facility may handle only those hazardous wastes and perform those activities covered by its permit. *See* 40 C.F.R. Part 264.

13. RCRA requires that a generator of hazardous waste must notify EPA of its hazardous waste activity. 42 U.S.C. § 6930. In general, generators are permitted to store hazardous waste for up to 90 days without having to acquire a RCRA permit, provided that certain storage and recordkeeping requirements are met, including keeping copies of manifests of hazardous waste

shipped off-site, biennial reports of hazardous waste activity, and records of any test results or waste determinations, for a period of three years. 40 C.F.R. 262.40.

14. Similarly, an owner or operator of a facility which treats, stores, or disposes of hazardous waste must comply with the minimum national standards for the acceptable management of hazardous waste laid out in Subpart A of 40 C.F.R. Part 264, or, in an authorized State, with the equivalent standards for hazardous waste management facilities promulgated in accordance with 40 C.F.R. § 271.12.

15. Under RCRA, states may obtain U.S. EPA authorization to administer and enforce a hazardous waste program in lieu of U.S EPA. 42 U.S.C. § 6926. The State of Missouri, through the Missouri Department of Natural Resources, is authorized to issue and enforce RCRA permits in Missouri. *See* 40 C.F.R. Part 272.1300. Nevertheless, EPA retains the legal ability to enforce RCRA civilly and criminally. See 42 U.S.C. §§ 6928(d)(3), (4) and (5) (federal prosecution of state program violations).

16. The criminal enforcement provisions of RCRA specify, in relevant part, that any person who . . . knowingly treats, stores, or disposes of any hazardous waste identified or listed under this subchapter...without a permit under this subchapter . . . shall be subject to a fine or up to five years imprisonment, or both. 42 U.S.C. § 6928(d)(2)(A).

### III. FACTS IN SUPPORT OF THE APPLICATION

**A. HPI Background Information**

17. Since September of 2023, I have been investigating the alleged illegal storage of hazardous wastes at HPI in St. Joseph, Missouri.

18. HPI is a solid and liquid pesticide manufacturing, storage, and distribution facility operating out of multiple locations in St. Joseph, Missouri, including the **Subject Premises**.

5

William "Bill" Garvey ("Garvey") is the President and majority owner of HPI. According to the website for HPI, http://hpiproducts.com/, the business specialized in the development and packaging of chemical formulations for private label and industrial markets.

19. According to Missouri Secretary of State website, the property located at 222 Sylvanie Street, St. Joseph, Missouri, was the principal office address of HPI Products, Inc., a company incorporated in 1980 but administratively dissolved as of June 2022. The Missouri Secretary of State website identifies William E. Garvey as the President and Registered Agent for HPI Products, Inc.

**B.     EPA Administrative Inspections and Compliance**

20. Between March 20, 2007, and May 16, 2007, Environmental Scientist Kevin Snowden for EPA Region 7 Enforcement and Compliance Assurance Division, conducted multiple inspections of the **Subject Premises** to ensure HPI was operating in compliance with administrative regulations.

21. During these inspections, Environmental Scientist Snowden observed hundreds of containers of waste and wastewater at the **Subject Premises**. Environmental Scientist Snowden also observed numerous spills and chemical releases at the facility.

22. Environmental Scientist Snowden also noted that although HPI began operations at the **Subject Premises** in the 1980's, the Missouri Department of Natural Resources (MDNR) did not receive notification of this facility's status as a generator of hazardous waste until 2006 and HPI still had never applied for a treatment, storage, or disposal facility permit from MDNR or the EPA.

23. Following these 2007 inspections, EPA Region 7 Civil Enforcement Division issued three Unilateral Administrative Orders (UAOs), addressing three HPI facilities in

St. Joseph, Missouri, including the **Subject Premises**. The respective UAO for each of the three facilities required HPI to comply with the following conditions:

*i) Refrain from removing or relocating the current materials located at the facility until EPA has approved such activity;*

*ii) immediately certify compliance with RCRA or cease waste generation and management activities at the facility until such certification has been made;*

*iii) restrict access to areas in which there has been a release of hazardous material within the facility; and*

*iv) formulate a plan for proper management and/or disposal of all solid and/or hazardous wastes pursuant to the applicable requirements of RCRA, including immediate clean-up of releases, investigation to determine off-site migration of waste, and clean-up of the building and any contaminated surrounding areas.*

24. Also in 2007, EPA-CID initiated a criminal investigation into HPI and Garvey. The investigation was opened based on suspicion that HPI was violating RCRA and the federal Clean Water Act.

25. In December of 2008, the United States and the State of Missouri jointly filed a civil judicial complaint in the United States District Court for the Western District of Missouri (Case No. 5:08-cv-06133) against HPI and Garvey, alleging violations of multiple state and federal environmental laws, including RCRA and the federal Clean Water Act, 33 U.S.C. § 1251 et seq. The complaint alleged that hazardous waste was generated, stored, and disposed of by HPI and Garvey at various HPI facilities, including the **Subject Premises** and sought monetary penalties and injunctive relief, including the identification and clean-up of waste on site.

26. On January 27, 2009, Garvey pleaded guilty, pursuant to a written plea agreement, in Case No. 09-00023-CR-HFS, to a single-count Information charging him with a violation of the Clean Water Act, 33 U.S.C. §§ 1319(c)(2)(A) and 1317(d), that is, a knowing discharge of a pollutant into a sewer without a pre-treatment permit. Garvey admitted that he did, and instructed his employees to, wash wastes, spills, and equipment rinses down floor drains which are connected to the sewer system of the City of St. Joseph, Missouri.

27. On September 9, 2009, the Court sentenced Garvey to six months' imprisonment, six months of home confinement, and ordered he pay a $100,000 fine for having disposed of pesticide wastewater into the sewers of the City of St. Joseph, Missouri.

C. **Consent Decree with HPI**

28. In January of 2011, the United States and the State of Missouri entered into a Consent Decree with HPI and Garvey in which the defendants agreed to pay civil penalties and certain cleanup costs to the United States and to the State of Missouri, and to address releases of various wastes from leaking or spilling containers, to perform an inventory of solid waste being stored at its facilities not subject to the 2007 UAOs, and to submit an Inventory and Immediate Removal Plan for identifying and shipping all hazardous waste located at those facilities.

29. In addition to the other requirements, this Consent Decree noted that HPI would enact a "Zero Discharge Plan" outlining the specific steps HPI would take to properly dispose of its process wastewater without discharging it to the City of St. Joseph's publicly owned treatment works. Additionally, the Consent Decree outlined the requirement for the Zero Discharge Work Plan to include "the plugging of floor drains, routing of waste lines away from floor drains or sanitary sewer access points, etc."

30. At some point between the enactment of the 2011 Consent Decree and 2018, the floor drains connecting the **Subject Premises** to the City of St. Joseph's publicly owned treatment works were plugged. In 2018, the City of St. Joseph Water Pollution Control group conducted a smoke test at the **Subject Premises** and found no smoke entering the building other than through the supervisor and maintenance toilets, and concluded there were no open floor drains in the building thus, preventing the discharge of wastewater through the floor drains.

31. In March of 2018, the Court concluded that the 2011 Consent Decree defendants, HPI and Garvey, had made no effort to comply with the terms of the Consent Decree. The Court found HPI and Garvey in contempt of court and appointed a receiver. Subsequently, HPI and Garvey made some efforts to comply with the Consent Decree, and the receivership Order was stayed. When HPI and Garvey's efforts to comply stalled again, the United States and the State of Missouri moved the Court to appoint a receiver, freeze defendants' assets, and enjoin defendants from generating additional waste. On January 14, 2022, the Court granted the motion and ordered HPI into receivership.

32. Following a status report submitted by the receiver, which noted the defendants' "lack of responsiveness, inaccurate forecasts, and unwillingness to improve upon or change past practices have inspired little to no confidence in their business' prospects – let alone their ability to meaningfully address environmental obligations pursuant to the Consent Decree," the Court ordered, on September 19, 2022, the immediate cessation of HPI's business operations. (Case No. 5:08-cv-06133, D.E. 153.)

D.  **Superfund Site Remediation**

33. Between 2007 and early 2023, EPA Region 7 Environmental Scientist Kevin Snowden conducted multiple inspections and made numerous site visits to the **Subject**

9

**Premises** to provide oversight of the 2007 UAO and the 2011 Consent Decree. These included multiple site visits conducted between 2018 into early 2023. Environmental Scientist Snowden also reviewed solid waste inventory reports submitted to EPA Region 7 by both HPI and by a third-party consultant retained by HPI's receiver following the January 14, 2022, order placing the HPI into receivership. On or about March 14, 2023, EPA Region 7's Enforcement and Compliance Assurance Division, Chemical Branch referred the **Subject Premises** to EPA's Superfund Program for site remediation.

34. In EPA Region 7's referral documents to EPA's Superfund Program, Environmental Scientist Snowden observed that that numerous solid and liquid wastes had been generated and were stockpiled in totes, drums, and tanks. Environmental Scientist Snowden observed the following:

(a.) hundreds of 250, 275, and 300-gallon totes containing potentially hazardous liquid wastes and processed wastewater;

(b.) various sized (approximately 2,000 - 4,000-pound capacity) flexible totes containing unfinished products that likely contain liquid wastes;

(c.) approximately 100 totes containing a mixture of potentially ignitable solvents mixed with water and sludge, generated from the failure of a tank valve on a 6,000-gallon aboveground storage tank;

(d.) approximately 20 fiber drum containers and several supersacks containing thiophanate, methyl, and pentachloronitrobenzene wastes resulting from a pesticide production process that would constitute listed wastes under RCRA; and

(e.) many stockpiled containers of potential wastes throughout the facility that contain unknown chemicals.

35. Environmental Scientist Snowden also noted that HPI had still never obtained or applied for a treatment, storage, or disposal facility permit from MDNR or EPA.

36. On October 13, 2023, I interviewed Joe Davis, On Scene Coordinator for EPA Region 7's Superfund Program. Mr. Davis informed me that since U.S. EPA Superfund commenced site remediation activities at the **Subject Premises** following the March 2023 referral, the Program has identified approximately 800 totes containing an estimated 300,000 gallons of wastewater which may contain waste that is characteristic for corrosivity or ignitability.

37. As part of its standard clean-up procedures, Superfund utilizes field screening methods to assess which containers potentially contain hazardous materials, including the use of pH paper to identify potentially corrosive substances and flash testing to identify potentially flammable substances.

38. Davis stated that Superfund has identified multiple wastewater totes that appear to have a pH level below 2 or above 12.5, which are therefore likely to be RCRA hazardous for the characteristic of corrosivity. Davis also stated they have identified at least one approximately 250-gallon tote that contains a solvent believed to be RCRA hazardous for the characteristic of ignitability. Davis also identified multiple 55-gallon drums of potentially corrosive or ignitable chemicals that may be subject to regulation under RCRA as hazardous waste.

39. During my October 13, 2023, interview with Joe Davis at the **Subject Premises**, I personally witnessed many large totes of what appeared to be wastewater. In a subsequent meeting with Mr. Davis at the **Subject Premises** on October 19, 2023, I again observed numerous totes and 55-gallon drums of wastewater being stored at the facility.

40. Superfund site remediation is ongoing and includes the screening of unassessed materials and the neutralization of high and low pH corrosive waste prior to transport and removal, which will include the potentially RCRA characteristic corrosive waste I am seeking to sample.

### IV. CONCLUSION

41. It is a violation of 42 U.S.C. § 6928 to knowingly store hazardous wastes without a RCRA permit.

42. To obtain further evidence of the suspected violations of Title 42 United States Code, Section 6928, it will be necessary for me to enter the premises of the **Subject Premises** and collect samples of the contents of the containers, described in Attachment B, containing potentially hazardous wastewater located at the **Subject Premises**.

43. I and the other officers executing this warrant will require the support of technical staff from the United States Environmental Protection Agency or approved contractors to enable sampling. I request that the search warrant authorize that these referenced personnel be permitted to accompany and assist the executing officers in the execution of this warrant.

44. Given the dangers, size, and scope of this warrant, your affiant anticipates that possibly two days will be needed to fully execute this warrant. Insofar, I ask that this warrant be executable over the course of two days.

45. Based on the foregoing statements, I have probable cause to believe that on the **Subject Premises** further described in Attachment A, there is evidence, detailed in Attachment B, of violations of Title 42 U.S.C. 6928.

46. This limited scope of a criminal search will aid investigators in determining whether repeated and ongoing violations of Title 42 are occurring on the premises. To the extent the representative samples from these containers are found to contain hazardous waste, and the

ongoing Superfund screening process may identify additional containers containing suspected hazardous wastes, investigators may seek an additional warrant to search remaining totes or containers on the premises.

47. I submit that this affidavit supports probable cause for a warrant to search the **Subject Premises** described in Attachment A and seize the items described in Attachment B.

Respectfully submitted,

ASHLEIGH BUNDY
Digitally signed by ASHLEIGH BUNDY
Date: 2023.11.13 16:04:28 -06'00'

Ashleigh T. Bundy
Special Agent
Environmental Protection Agency –
Criminal Investigation Division

Subscribed and sworn to before me via reliable electronic means on the

____20th____ of November 2023.

Honorable Jill A. Morris
United States Magistrate Judge
Western District of Missouri